### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

**NESTOR CHAVEZ,**
**JESUS DANIEL HERNANDEZ,**
**FRANCISCO HOLGUIN** and
**SARA HOLGUIN,** his wife,
Individually and as parents and next
friends of their minor children Francisco
Abran Holguin and Priscila Holguin, and
**MELISSA RANSOM,**

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

NOV 30 2004

Plaintiffs,

CLERK

vs.                                                No. **CIV 02-621 MCA/RHS**

**CITY OF ALBUQUERQUE,** a Municipality
Organized under the laws of the State of New Mexico,
and **MARTIN CHAVEZ III,** Mayor of the City of Albuquerque,
Individually and in his Official Capacity,

Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' *Motion to Dismiss No. 1:*

*Dismissal of All Federal Constitutional, Statutory, and Rule Based Claims on the Basis of*

*Qualified Immunity and Claim for Injunctive Relief* [Doc. 28], filed November 25, 2002, and

*Plaintiffs' Consolidated Motion for Summary Judgment* [Doc. 49], filed October 18, 2003.

Having considered the parties' submissions, the relevant law, and otherwise being fully

advised in the premises, the Court grants Defendants' motion and denies Plaintiffs' motion.



## I. BACKGROUND

On January 31, 2002, the *Albuquerque Journal* reported that the City of Albuquerque (the City) had changed its policy regarding police-misconduct lawsuits, opting to bring each case to trial rather than attempt a settlement. [Doc. 6, Exh. A, January 31, 2002, *Albuquerque Journal*, "All APD Lawsuits Going to Court"]. In the *Journal* article, Mayor Martin Chavez explained that the policy was being changed to allow for the public airing of police-misconduct allegations. The mayor was quoted as stating that "[s]unshine is a great disinfectant. If we've got a problem with a police officer or a police policy, this will help us — this will improve our police department. At the same time, it will discourage frivolous lawsuits." [Id.]. The parties here do not dispute or contest that there exists a "no settlement" policy with respect to police misconduct cases with the City of Albuquerque.

On June 13, 2002, Plaintiffs Nestor Chavez, Jesus Daniel Hernandez, Francisco and Sara Holguin, and Melissa Ransom filed their *First Amended Complaint for Violation of Civil Rights Under Color of State Law* against the City and Mayor Chavez, challenging the City's blanket "no settlement" policy. [Doc. 6]. At the time they filed their 42 U.S.C. § 1983 action, all Plaintiffs were litigants in police-misconduct actions against the City. [See Doc. 6 at 2-3]. In their *Complaint*, Plaintiffs allege that the City's "no settlement" policy violates their First Amendment right to access to the judicial system by depriving them of the opportunity to have their cases individually evaluated for potential settlement. Plaintiffs make clear that they are not claiming an absolute right to have their cases settled but, rather,

2

a right to an evaluation of their cases and a settlement conference attended in good faith by City representatives. [Id. at 9]. According to Plaintiffs, they are guaranteed this right under the United States Constitution, the Civil Justice Expense and Delay Reform Plan (the Plan), Federal Rule of Civil Procedure (Fed.R.Civ.P.) 16(c), and the local rules of the District of New Mexico. [Id. at 9-10]. Plaintiffs also allege that the "no settlement" policy violates their Fourteenth Amendment rights to substantive and procedural due process and equal protection of the laws. [Id. at 10, 12]. The requested relief includes punitive damages and an injunction preventing the City from further enforcement of the policy at issue. [Id. at 12-13].

On November 25, 2002, Defendants filed their *Motion to Dismiss No. 1: Dismissal of All Federal Constitutional, Statutory, and Rule Based Claims on the Basis of Qualified Immunity and Claim for Injunctive Relief.* [Doc. 29]. Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on grounds that (1) 42 U.S.C. § 1983 does not provide a cause of action for alleged violations of the Plan or the Rules of Civil Procedure, (2) a decision to forgo settlement of Plaintiffs' lawsuits before attending a settlement conference does not amount to bad faith as contemplated by Fed.R.Civ.P. 16(c), and (3) Mayor Chavez is entitled to qualified immunity. [Id.]. Defendants also assert that Plaintiffs lack standing to seek prospective injunctive relief because they have failed to establish the likelihood of a real or immediate threat of future harm by Defendants. [Id. at 11-13].

Plaintiffs respond that Defendants' motion is in the nature of a cross-motion for

summary judgment, filed in reply to Plaintiffs' previously filed three motions for partial summary judgment. [Doc. 37]. Those motions were denied without prejudice by *Order* filed September 28, 2003. In that order, the Court granted Plaintiffs leave to refile a single, consolidated motion for summary judgment. [Doc. 48]. On October 18, 2003, Plaintiffs filed *Plaintiffs' Consolidated Motion for Summary Judgment.* [Doc. 49].

Plaintiffs move for summary judgment on three grounds. First, they argue that the settlement facilitation process is a form of petitioning the government for redress and, as such, is protected by the First Amendment. According to Plaintiffs, the "no settlement" policy is being implemented in retaliation against those litigants who seek to exercise their First Amendment rights by holding the City responsible for the misconduct of its police officers. [Doc. 49 at 12-15]. Plaintiffs next argue that the policy denies them equal protection of the laws in that it arbitrarily treats police-misconduct plaintiffs differently from all other federal-court litigants suing the City. [Id. at 16-17]. Finally, Plaintiffs maintain that the policy deprives them of substantive and procedural due process. [Id. at 18-20].

In response, Defendants raise the same defenses raised in their motion to dismiss, asserting that (1) because one party cannot be forced to settle a dispute, a policy that gives the City the option of forgoing settlement without attending a settlement conference cannot amount to bad faith, and (2) Plaintiffs cannot overcome the defense of qualified immunity because they cannot demonstrate that the policy violates their constitutional rights under the First and/or Fourteenth Amendments. [See generally Doc. 52].

4

## II. ANALYSIS

### A. Applicable Standards

#### 1. Fed.R.Civ.P. 12(b)(6) and 56(c)

Under Fed. R. Civ. P.12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Dismissal on this ground may occur *sua sponte* or upon a defendant's motion. <u>See</u> <u>Curley v. Perry</u>, 246 F.3d 1278, 1284 (10th Cir.), <u>cert. denied</u>, 534 U.S. 922 (2001). When requested in a defendant's motion, dismissal under this rule is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>GFF Corp. v. Associated Wholesale Grocers, Inc.</u>, 130 F.3d 1381, 1384 (10th Cir.1997) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." <u>Miller v. Glanz</u>, 948 F.2d 1562, 1565 (10th Cir.1991). Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. <u>GFF Corp.</u>, 130 F.3d at 1384.

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate when the motion papers,

affidavits, and other evidence submitted by the parties show that no genuine issue exists as

to any material fact and that the moving party is entitled to judgment as a matter of law. A

"genuine issue" exists where the evidence before the Court is of such a nature that a

reasonable jury could return a verdict in favor of the non-moving party as to that issue. See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). An issue of fact is

"material" if under the substantive law it is essential to the proper disposition of the claim.

See id. at 248.

"The nonmoving party 'may not rest upon the mere allegations or denials of his

pleadings' to avoid summary judgment. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d

887, 891 (10th Cir. 1991) (quoting Anderson, 477 U.S. at 248). Instead, the nonmovant

must present sufficient evidence in specific, factual form such that a jury would be able to

return a verdict in that party's favor. Id. Judgment is appropriate as a matter of law if the

non-moving party has failed to make an adequate showing on an essential element of its

case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying

a motion for summary judgment must be admissible or usable at trial (although they do not

necessarily need to be presented in a form admissible at trial). See Celotex Corp., 477 U.S.

at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998). "To

survive summary judgment, 'nonmovant's affidavits must be based upon personal

6

knowledge and set forth facts that would be admissible in evidence;   conclusory and self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotation omitted). Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

Finally, cross-motions for summary judgment are to be treated separately inasmuch as the denial of one does not require the Court to grant the other. Buell Cabinet Co., Inc. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979). Moreover, while the Court may assume on cross-motions that no evidence other than that filed by the parties need be considered, summary judgment is nevertheless inappropriate if disputes remain as to material facts. James Barlow Family Ltd. P'ship v. David M. Munson, Inc., 132 F.3d 1316, 1319 (10th Cir. 1997).

**2. Qualified Immunity**

When an individual defendant raises the affirmative defense of qualified immunity in a summary-judgment motion, the burden shifts to the plaintiff to establish that the defendant's actions violated a constitutional or statutory right and that the right at issue was clearly established at the time of the defendant's unlawful conduct. See Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001). If the plaintiff fails to meet this burden, then the Court must grant the defendant qualified immunity. See id. at 1156. If the plaintiff does establish

the violation of a clearly established constitutional or statutory right, then (for purposes of

the defendant's summary-judgment motion) the burden shifts to the defendant to prove that

there are no genuine issues of material fact and that he or she is entitled to judgment as a

matter of law. See id.

42 U.S.C. § 1983 provides, in relevant part, that:

Every person who, under color of any statute, ordinance, regulation, custom,
or usage, of any State or Territory or the District of Columbia, subjects, or
causes to be subjected, any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper proceeding for
redress.

42 U.S.C. § 1983. Persons sued in their individual capacity under this civil-rights statute

generally are entitled to qualified immunity unless it is shown that their actions violated a

specific federal statutory or constitutional right and that the rights which they allegedly

violated were clearly established at the time of the conduct at issue. See Oliver v. Woods,

209 F.3d 1179, 1185 (10th Cir. 2000).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme

Court or Tenth Circuit decision on point, or the clearly established weight of authority from

other courts must have found the law to be as the plaintiff maintains." Medina v. City &

County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). But "officials can still be on

notice that their conduct violates established law even in novel factual circumstances."

Hope v. Pelzer, 536 U.S. 730, 741, 745 (2002); accord Holland v. Harrington, 268 F.3d

8

1179, 1197 (10th Cir. 2001). The "salient question" is whether the state of the law at the time of the incident gave the defendants "fair warning" that their conduct was unconstitutional. Hope, 536 U.S. at 741.

### 3. Municipal Liability

Qualified immunity, however, is not a valid defense to a claim of municipal liability. Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir.2000). Moreover, under § 1983, a municipality may not be held liable on a theory of respondeat superior. Id. (*citing* Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691). Instead, the plaintiff must show "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." Camfield v. City of Oklahoma City, 248 F.3d 1214, 1229 (10th Cir.2001) (internal quotation marks omitted). Accordingly, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy inflicts the injury . . . the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. "The touchstone for determining "official policy" is "distinguish[ing] acts of the municipality from acts of employees of the municipality, and thereby mak[ing] clear that municipal liability is limited to action for which the municipality is actually responsible . . . . [M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials

9

responsible for establishing final policy with respect to the subject matter in question."

Ledbetter v. City of Topeka, Kan., 318 F.3d 1183, 1189, (10th Cir. 2003) (*quoting* Melton

v. City of Oklahoma City, 879 F.2d 706, 723 (10th Cir.1989)).

### B. 42 U.S.C. § 1983 and Fed.R.Civ.P. 16

As explained more fully above, 42 U.S.C. § 1983 subjects to liability those who,

while acting under color of state law, deprive any United States citizen of his or her

constitutional rights. See 42 U.S.C. § 1983. Because § 1983 is not an independent source

of substantive rights, but rather a mechanism for enforcing federal rights conferred

elsewhere, the analysis of Plaintiffs' federal civil-rights claims necessarily begins by

identifying the specific constitutional rights that Defendants are alleged to have violated.

See Graham v. Connor, 490 U.S. 386, 393-94 (1989).  In this case, Plaintiffs contend that

the "no settlement" policy (1) is being implemented in retaliation against those litigants who

seek to exercise their First Amendment rights by holding the City responsible for the

misconduct of its police officers; (2) denies them equal protection of the laws in violation

of the Fourteenth Amendment in that it arbitrarily treats police-misconduct plaintiffs

differently from all other federal-court litigants suing the City; and (3) deprives them of

substantive and procedural due process, also in violation of the Fourteenth Amendment.

[Doc. 49 at 12-20].

Plaintiffs are very clear as to the nature of their complaint.  "Plaintiffs are NOT

claiming that the City Defendants will not settle 'prior to attending a Settlement Conference'

10

as stated in [Defendants'] response. Plaintiffs are complaining that the City of Albuquerque, by order of its mayor, Defendant Chavez, will not evaluate ANY police misconduct case for settlement, including the cases of the Plaintiffs." [Doc. 53 at 2]. Thus the manner in which Plaintiffs have framed their issues requires that Rule 16 of the Federal Rules of Civil Procedure, "Pretrial Conferences; Scheduling; Management," provide the necessary starting point and framework for an understanding of Plaintiffs' claims.

Rule 16 gives the Court discretion to direct attorneys and, if applicable, any unrepresented parties to appear before it for a pretrial conference. Fed.R.Civ.P. 16(a). Among the express purposes of such a conference are to (1) expedite the disposition of the action; (2) establish early control so as to promote and ensure case management; (3) discourage wasteful pretrial activities; (4) improve the quality of the trial through more thorough preparation; and (5) facilitate settlement of the case. Id. While settlement similarly is among the express topics for consideration at the pretrial conference, so are such matters as formulation and simplification of issues; necessity and/or desirability of amending pleadings; control and scheduling of discovery; identification of witnesses; and evidentiary limitations. Fed.R.Civ.P. 16(c). Indeed, the Tenth Circuit has stated that "the whole purpose of Rule 16 is to clarify the real nature of the dispute at issue . . . ." Youren v. Tintic Sch. Dist., 343 F.3d 1296, 1304 (10th Cir. 2003) (quoting Rios v. Bigler, 67 F.3d 1543, 1549 (10th Cir. 1995)). Rule 16 also provides a means for sanctioning an attorney and/or a party for noncompliance with the "high duty to insure the expeditious and sound

11

management of the preparation of cases for trial." In re Baker, 744 F.2d 1438, 1440 (10th Cir. 1984). Thus, while settlement unquestionably plays an important role at the Rule 16 conference, settlement facilitation is but one of many important matters contemplated by the Rule with respect to the overall management of a case as it progresses through the Courts.

And the fact that settlement is among many issues of concern to Rule 16 proceedings does not diminish the import of settlement facilitation. To be sure, a settlement conference provides an opportunity for the parties to hear an unbiased evaluation of the dispute as seen through the eyes of someone with no interest in the outcome of the case save for the fair and just resolution of the issues. Parties who previously had considered settlement an impossibility may reevaluate their position and, in fact, reach a settlement agreement. Still, while Rule 16 is designed, in part, to encourage pretrial settlement discussions, its purpose is not to coerce or strong arm a settlement or impose settlement negotiations on unwilling parties. See Kothe v. Smith, 771 F.2d 667, 669 (2nd Cir. 1985). The Advisory Committee Notes clearly contemplate this inasmuch as they recognize that "the unwillingness of a party to be available . . . for a settlement conference may be a clear signal that the time and expense involved in pursuing settlement is likely to be unproductive and that personal participation by the parties should not be required." Fed.R.Civ.P. 16 advisory committee's note. In further recognition as to the purposes of Rule 16, this Court unequivocally adopts and incorporates herein the reasoning of Magistrate Judge Lorenzo Garcia articulated in his May 22, 2002 *Order Vacating Settlement Conference* in the case of Plaintiff Ransom. [See

12

Doc. 73 in case no. 01cv822 RLP/LFG].

### C. Defendants' Motion to Dismiss as Cross-Motion for Summary Judgment

In this case, Plaintiffs contend that Defendants' *Motion to Dismiss No. I: Dismissal of All Federal Constitutional, Statutory, and Rule Based Claims on the Basis of Qualified Immunity and Claim for Injunctive Relief*, though styled as a motion dismiss, is in actuality in the nature of a cross-motion for summary judgment. [Doc. 37 at 2]. So construed, Plaintiffs become the adverse parties and "may not rest upon the mere allegations or denials of [their] pleadings." Anderson, 477 U.S. at 248). Plaintiffs now bear the burden of presenting sufficient evidence in specific, factual form such that a jury would be able to return a verdict in their favor. Bacchus Indus., Inc., 939 F.2d at 891. Specifically, Plaintiffs at this stage may present affidavits, depositions, and/or answers to interrogatories. See Fed.R.Civ.P. 56(e). Plaintiffs, however, have chosen not to submit such documentation. [Doc. 50 at 3]. Instead, "Plaintiffs incorporate . . . the content of their previously[]filed motions [for partial summary judgment] as well as the content of their Reply to Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment on First Amendment grounds." [Doc. 37 at 3]. As explained, Plaintiffs' three motions for partial summary judgment were dismissed without prejudice and *Plaintiffs' Consolidated Motion for Summary Judgment* was filed in their stead. The Court thus looks to the consolidated motion, as well as *Plaintiffs' Reply to Defendants' Response to Their Consolidated Motion for Summary Judgment*, which is in all relevant respects identical to *Plaintiffs' Reply to*

13

*Defendants' Response to Their Motion for Partial Summary Judgment (First Amendment Claims),* in its determination as to whether Plaintiffs have put forth sufficient facts to survive a motion for summary judgment.

After a thorough review of the pleadings and submissions in this case, I conclude that Plaintiffs have not satisfied their burden of persuasion. Plaintiffs have set forth only conclusory allegations to demonstrate that they have sustained an injury of constitutional dimensions. While Plaintiffs assert that the City's "no settlement" policy creates a chilling effect with respect to those federal-court litigants who choose to pursue police-misconduct cases, they point to no specific facts to support this contention. [See Doc. 53 at 8]. In their reply, Plaintiffs make reference to the memorandum they filed in conjunction with their consolidated motion, but it is not enough for Plaintiffs to rely on the allegations included therein. See Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading . . . ."). Accordingly, the Court finds Plaintiffs' reply insufficient to defeat Defendants' motion for summary judgment.

### D. Defendants' Motion to Dismiss as Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)

The same result would obtain were the Court to treat Defendants' motion as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs' claims fail as a matter of law due to Plaintiffs' inability to establish that they have been injured as a result of the "no settlement" policy. Rule 16 does not guarantee to a litigant settlement of his or her case. In

14

fact, where settlements efforts or where settlement is otherwise not feasible, other remedies remain available under the Federal Rules of Civil Procedure for a litigant to bring successful closure to his or her case. For example, the merits of a litigant's case (or the claims of an adversary) may be tested through summary judgment, motion for judgment on the pleadings, or trial by jury. See Fed.R.Civ.P. 12(c), 56. Further, allegations of a litigant's misconduct during the course of litigation, including violations of the rules of practice and procedure and professional responsibility, are subject to sanctions which can be imposed by the Court. All of these avenues provide litigants with a forum in which they can pursue and test the merits of their own claims. Importantly, this forum and the Court's rules and procedures are equally available to both plaintiffs and defendants. The City has no less of a right to have a jury decide claims directed against it. Morrison v. Toys "R" Us, Inc., Massachusetts, Supreme Judicial Court of Massachusetts, SJC-09179 (April 15, 2004).

I conclude that because Plaintiffs here have failed to state a claim upon which relief can be granted, their complaint must be dismissed.

## III. CONCLUSION

We are a nation of laws. Our citizens' faith and trust in the rule of law depends not only upon the authority of police officers to enforce the law, but also upon those officers' faithful adherence to the law. For these reasons, complaints of police misconduct or abuses of authority implicate special attention in our society. The value of resolving or addressing such complaints rests not simply upon a win/loss score card. More importantly, maintaining

15

and restoring the faith and confidence of every citizen in the rule of law requires that there be mechanisms in place for addressing, in a timely and reasonable manner, individual grievances - especially where those grievances implicate the actions of police officers and the civil rights of a citizen. In the present case, while I conclude that the Plaintiffs present no viable cause of action, I also question the wisdom of a blanket "no settlement" policy limited *only* to police misconduct cases.

Based on the foregoing, this Court denies *Plaintiffs' Consolidated Motion for Summary Judgment* and grants Defendants' *Motion to Dismiss No. I: Dismissal of All Federal Constitutional, Statutory, and Rule Based Claims on the Basis of Qualified Immunity and Claim for Injunctive Relief.*

**IT IS, THEREFORE, ORDERED** that *Plaintiffs' Consolidated Motion for Summary Judgment* is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' *Motion to Dismiss No. I: Dismissal of All Federal Constitutional, Statutory, and Rule Based Claims on the Basis of Qualified Immunity and Claim for Injunctive Relief is* **GRANTED**.

**SO ORDERED** this 30th day of November, 2004, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge